FILED
RICHARD W. NAGEL
CLERK OF COURT

2022 JAN 19 PM 3: 35

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | CASE NO. |
| Plaintiff, | : | JUDGE Watson |
| v. | : | **INFORMATION** |
| | : | 18 U.S.C. § 1349 |
| | : | 18 U.S.C. § 1957 |
| **TODD WILKIN,** | : | |
| | : | **FORFEITURE** |
| Defendant. | : | |

**THE UNITED STATES ATTORNEY CHARGES THAT:**

**COUNT 1**
**(Conspiracy to Commit Wire Fraud)**

1. At all times relevant to this Information, the Defendant, **TODD WILKIN**, was a majority owner of, and ran the daily operations for, Company A, a tire sales and service company located in Hillsboro, Ohio, in the Southern District of Ohio.

2. Beginning at least in or around October 2013, the exact date being unknown, and continuing through at least in or around February 2018, in the Southern District of Ohio, the Defendant, **TODD WILKIN**, together with others known and unknown to the Grand Jury, did knowingly and intentionally conspire and agree to commit an offense against the United States, that is, to devise and intend to devise a scheme to defraud financial investors to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, to wit, the Defendant, along with other known individuals, devised a scheme to defraud financiers of off-the-road (OTR) tires by accepting millions of dollars under false pretenses as part of fraudulent OTR purchases, and in furtherance of the scheme used wire communications in interstate and foreign commerce, in violation of 18 U.S.C. § 1343.

*Manner and Means*

3. The Defendant's conduct was part of a fraudulent investment conspiracy perpetrated by Jason Adkins, the Defendant, and others. As part of that conspiracy, **WILKIN**, Adkins, and others participated in a scheme to solicit investment and loan money for fictitious pre-arranged OTR tire transactions. Adkins and others fraudulently promised investors that funds would be used to purchase pre-identified OTR tires at a steep discount, and that the tires would then be re-sold to a buyer that had already been secured by Adkins, and others, at a much higher rate, thus purportedly yielding a large profit on their investment. Adkins and others solicited the financing for numerous such tire transactions, despite having no intentions of either purchasing or selling any such OTR tires.

4. It was further part of the conspiracy that **WILKIN** played a part in a number of the above-described fraudulent OTR transactions by posing as the seller of the OTR tires that were purportedly part of the transaction arranged by Adkins.

   a. For example, in advance of consummating the fraudulent transactions, and in furtherance of the scheme to defraud, **WILKIN** spoke with multiple victims of the scheme concerning his and Company A's role in the transactions. **WILKIN** did so in order to lend veracity to the fraudulent transactions in furtherance of the conspiracy. **WILKIN**'s conversations included face-to-face interaction with the putative tire purchasers in an effort to verify the existence of the tires, Company A's ownership of the tires, or to verify Company A's intention to obtain the tires. In these discussions, **WILKIN** proceeded under the guise that he and Company A were simply tire sellers in an arms-length transaction, with no knowledge of the

2

investment scheme. **WILKIN** also held himself out in these discussions as acting in his capacity as a representative of Company A.

b. Further, **WILKIN** represented on multiple occasions to the potential investors that Company A had the tires at issue and was willing to sell them, or that Company A could obtain the tires at issue and would then be willing to sell them.

c. **WILKIN** took these steps in furtherance of the scheme to defraud despite knowing that neither he nor Company A had possession of the OTR tires; that neither he nor Company A had any intention of obtaining the OTR tires; and that neither he nor Company A had any intention of selling any actual tires.

d. **WILKIN** further took these steps in furtherance of the scheme despite knowing that Jason Adkins had no intention of purchasing any OTR tires from **WILKIN** or Company A, and despite knowing that Jason Adkins then had no intention of selling any actual OTR tires for profit after the transaction with **WILKIN** and Company A.

5. It was further part of the conspiracy that **WILKIN** took certain record-keeping actions in relation to the scheme. For example, **WILKIN** caused sales quotes to be created indicating that Company A had available, or could procure, certain tires for a certain price; such work orders were then used by Adkins to show potential investors as a way to induce their investment in the scheme. **WILKIN** then caused the sales quotes to be deleted. After the investment money came in and was sent to Company A in relation to the tires that were listed on the now-deleted sales quote, **WILKIN** caused Company A to promptly forward a majority of the funds to one, or more, co-conspirators involved in the scheme; as part of the scheme, **WILKIN** then caused Company A to retain a portion of the incoming money as payment. All of this occurred

despite the fact that neither Wilkin nor Company A had, or made an attempt to procure, the tires that were held out as part of those transactions.

6. In furtherance of the conspiracy, and in order to effect the objects thereof, on or about March 17, 2015, in the Southern District of Ohio, the Defendant, **TODD WILKIN**, caused the following: a wire transfer, in interstate commerce, in the amount of $1,632,000, from a City National Bank account number ending in 7166, into an LCNB Bank account number ending in 5680 held in the name of Company A, an account opened, maintained, or controlled by **WILKIN**.

**All in violation of Title 18, United States Code, Section 1349.**

## COUNT 2
### (Money Laundering)

7. On or about March 19, 2015, in the Southern District of Ohio, the Defendant, **TODD WILKIN**, did knowingly engage in a monetary transaction in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, as follows:

| APPROXIMATE DATE | MONETARY TRANSACTION |
|---|---|
| 03/19/2015 | Wire transfer, in interstate commerce, in the amount of $685,000 from an LCNB Bank account number ending in 5680 held in the name of Company A, an account opened, maintained, or controlled by **WILKIN**, into a Bank of America account number ending in 0077 held in the name of Jason Adkins, an account opened, maintained, or controlled by a **WILKIN** co-conspirator. |

**All in violation of Title 18, United States Code, Section 1957.**

4

## FORFEITURE ALLEGATION

8. The allegations of this Information are realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

9. Upon conviction of the offense alleged in Count 1 of this Information in violation of 18 U.S.C. § 371 (Conspiracy to Commit an Offense), the Defendant, **TODD WILKIN**, shall forfeit to the United States, in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, including, but not limited to, a sum of money equal to the amount of proceeds the Defendant obtained that are traceable to such offense.

10. **Substitute Assets**: If any of the forfeitable property, as a result of any act or omission of the Defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the Defendant up to the value of the forfeitable property.

**Forfeiture pursuant to:** Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.

KENNETH L. PARKER
UNITED STATES ATTORNEY

*/s/ signature*

S. COURTER SHIMEALL (OH 0090514)
PETER K. GLENN-APPLEGATE (OH 0088708)
DAVID J. TWOMBLY (OH 0092558)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, OH 43215
Phone No.: (614) 469-5715
Fax No.: (614) 469-5653
Email: courter.shimeall@usdoj.gov
Email: peter.glenn-applegate@usdoj.gov
Email: david.twombly@usdoj.gov